AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Lucio Antonio Martinez Hernandez<br>Mike Enrique Haylock Guillen<br>Jesus Eduardo Torres Torres, and<br>Cristian De Jesus Rivas Fernandez<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No.<br><br>8:25-mj-2890-TGW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  Unknown to August 18, 2025  in the county of  Hillsborough  in the
Middle  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506 (a) and (b); and<br>21 U.S.C. § 960(b)(1)(B)(ii) | Conspiracy to Traffic a Controlled Substance on a Vessel Subject to the Jurisdiction of the United States. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

David M. Tomcsik, CGIS Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug. 28, 2025

*Judge's signature*

City and state:  Tampa, Florida    Thomas G. Wilson, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, David M. Tomcsik, being duly sworn, deposes and states the following:

1. I submit this affidavit in support of a criminal complaint charging four individuals—Lucio Antonio **MARTINEZ HERNANDEZ**, Mike Enrique **HAYLOCK GUILLEN**, Jesus Eduardo **TORRES TORRES**, and Cristain De Jesus **RIVAS FERNANDEZ**—with knowingly and willfully conspiring to possess with the intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), and possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), and 21 U.S.C §§ 960(b)(1)(B)(ii).

2. I have been a Special Agent with the Coast Guard Investigative Service ("CGIS") since 2009. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and numerous other training programs related to criminal investigations. I have worked as a Special Agent with Operation Panama Express Strike Force from July 2016 through June 2020, and then again from August 2024 to present. Operation Panama Express is a Federal Organized Crime Drug Enforcement Task Force ("OCDETF") composed of the following agencies: Drug Enforcement Administration ("DEA"), Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, Homeland Security

Investigations ("HSI"), United States Coast Guard ("USCG"), United States Attorney's Office (USAO) of the Middle District of Florida and CGIS. Special Agents assigned to Operation Panama Express investigate Transnational Criminal Organizations that use maritime conveyances, like go-fast vessels, to smuggle illicit drugs through international waters of the Pacific Ocean and Caribbean Sea for later distribution into the United States of America.

3. As a CGIS Special Agent, I have participated in numerous criminal investigations of individuals who are in violation of laws and statutes of the United States and the United States Code of Federal Regulations. I have been employed by the Coast Guard for over 27 years. Prior to becoming a Special Agent with CGIS, I was a Chief Operations Specialist and Boarding Team Member with the Coast Guard. In that role, I was responsible for enforcing federal maritime laws, communications, and operating and managing maritime related operations.

4. The information contained herein is either personally known to me or has been provided to me by other law enforcement officers with whom I have worked on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause for the criminal charges set forth herein and, therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

5. The USCG has the authority under 14 U.S.C. § 522 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws.

## **PROBABLE CAUSE**

6. On or about August 18, 2025, while on routine patrol in the Caribbean Sea, the USS MINNEAPOLIS-ST PAUL, a U.S. Navy littoral combat ship, with an embarked USCG Law Enforcement Detachment (LEDET) 406, and a Maritime Patrol Aircraft ("MPA"), observed a go-fast vessel ("GFV") approximately 130 nautical miles south of Jamaica, transiting through a known drug trafficking area in international waters. The GFV was reported as approximately 40 ft in length, blue in color, with 03 outboard engines, 04 persons onboard, and with packages on deck.

7. The U.S. Coast Guard Southeast District (CGD-SE) assumed tactical control of the USS MINNEAPOLIS-ST PAUL for the interdiction and apprehension phase and the embarked LEDET was granted a Statement of No Objection ("SNO") to conduct a Right of Visit (ROV) boarding of the GFV. Additionally, CGD-SE authorized the minimum force necessary to compel compliance, up to and including warning shots and disabling fire as the GFV displayed no indicia of nationality, was located in international waters, and was suspected of drug smuggling.

8. The USS MINNEAPOLIS-ST PAUL and MPA observed persons onboard the GFV jettison approximately 30 bales into the water, actions consistent with smuggled narcotics.

9. The USS MINNEAPOLIS-ST PAUL and USCG LEDET boarding team obtained positive control of the GFV without use of force, at a position approximately 0.15 nautical miles from their jettison location.

3

10. The USCG boarding team reported a total of 4 people onboard the GFV, 3 persons claiming Colombian nationality, and 1 person claiming Honduran nationality. Additionally, 1 person claimed to be the master of the GFV.

11. No claim of nationality was made for the GFV, and as such, the USS MINNEAPOLIS-ST PAUL LEDET requested to treat the GFV without nationality (TWON), and CGD-SE subsequently approved and authorized them to conduct a full law enforcement boarding.

12. USS MINNEAPOLIS-ST PAUL and USCG LEDET recovered 40 jettisoned bales and located an additional 54 bales onboard the GFV. The USCG LEDET also conducted 2 narcotic identification kits (NIK) tests on packages that had tested positive for presumptive cocaine.

13. The USS MINNEAPOLIS-ST PAUL reported the 94 bales have an at-sea weight of approximately 2,914 kilograms of cocaine.

14. The four mariners were subsequently taken into custody.

## CONCLUSION

15. Based on my training, experience, and knowledge of the investigation, I believe that there is probable cause to believe that the four defendants named above knowingly and willfully conspired with each other and other persons to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503 and 70506, and Title 21, United States Code, Section 960(b)(1)(B)(ii) as described herein.

_____
David M. Tomcsik
Special Agent
Coast Guard Investigative Service

Affidavit sworn before me this 28 day of August, 2025.

_____
THOMAS G. WILSON
United States Magistrate Judge